OSCN Found Document:SPENCER v. NELSON

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 SPENCER v. NELSON
2024 OK 63
Case Number: 120210
Decided: 09/17/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 63, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

JIMMY WAYNE SPENCER, as Special Administrator and Representative of the Estate of MARK GLEN SPENCER, and as Representative of the Beneficiaries Or Heirs of the Estate of MARK GLEN SPENCER, Plaintiff/Appellant,
v.
LANA NELSON, D.O. and NORMAN REGIONAL MEDICAL AUTHORITY, Defendant/Appellee.

ON WRIT OF CERTIORARI TO THE 
COURT OF CIVIL APPEALS, DIVISION I

¶0 Administrator sought certiorari review from the Court of Civil Appeals' decision affirming the trial court's order sustaining Defendants' Motion to Dismiss. Administrator brought a wrongful death action against the defendants for damages arising from physician's alleged negligent and grossly negligent treatment of Decedent by failing to make a surgical repair which allegedly was the proximate cause of Decedent's sepsis and death. Administrator urged that the Court of Civil Appeals erred by deciding questions of substance in a way that was not in accord with applicable decisions of this Court. We agree and hold: (1) for claims arising under the Oklahoma Governmental Tort Claims Act (GTCA), the discovery rule applies to wrongful death actions arising from medical negligence; and (2) a governmental employee has no immunity under the GTCA for claims arising from gross negligence, acts outside the scope of employment, and the GTCA notice requirements do not apply to such tort claims. The opinion of the Court of Civil Appeals is vacated, the judgment of the trial court is reversed, and the matter remanded for further proceedings.

COURT OF CIVIL APPEALS' OPINION VACATED; 
DISTRICT COURT'S ORDER REVERSED; MATTER
REMANDED FOR FURTHER PROCEEDINGS

S. Randall Sullivan, Oklahoma City, Oklahoma, for Appellant.

Hunter Hillin, Dallas, Texas, for Appellant.

Robert D. Hoisington, Oklahoma City, Oklahoma, for Appellee.

Edmondson, J.

¶1 Mark Glen Spencer (Decedent), a patient in defendant Norman Regional Medical Authority hospital (Hospital), died from sepsis two days after a surgical procedure performed by Lana Nelson, D.O., an alleged employee of Hospital. Decedent's brother brought this action against Hospital for the alleged negligent acts of Nelson pursuant to the Oklahoma Governmental Tort Claims Act, 51 O.S. 2011, § 151 et seq., and individually against Nelson for the alleged grossly negligent acts which would fall outside the scope of employment if it is determined that Nelson is an employee of Hospital.

FACTS AND PROCEDURAL HISTORY

¶2 Dr. Nelson performed a duodenal switch surgery on Mark Spencer in Norman Regional Hospital. Two days later, on July 14, 2019, Nelson died of sepsis from a bowel perforation, allegedly caused by Nelson's failure to address Decedent's ventral hernia during surgery. In October 2019, Decedent's brother, Jimmy Wayne Spencer, plaintiff, was appointed as Special Administrator (Administrator), of Decedent's estate "to look into the feasibility of filing a wrongful death action on behalf of Mark Glen Spencer's estate."[1] Administrator requested medical records from Hospital in October 2019. Hospital produced only 100 of the 662 pages of medical records. On April 2, 2020, Administrator made a second request for the entire medical record. Ten months after the initial request, and Hospital had still failed to produce the full medical chart as requested, Administrator sent a third request to Hospital on July 31, 2020. The complete medical chart was not provided until September 4, 2020, three hundred eighteen (318) days after Administrator's initial request, and more than one year after Decedent's death. Hospital offered no explanation for its almost one-year delay in producing requested medical records. Hospital argued that this delay was not "pertinent to the Personal Representative's knowledge of his tort claim."[2] Hospital also urged that the failure to provide "the full copy of the records is an issue faced in virtually every lawsuit."[3]

¶3 On December 23, 2020, Administrator sent a letter via certified mail to Hospital to provide "notice under the Oklahoma Governmental Tort Claims Act" of the claim for damages by Decedent's estate arising out of the alleged negligent and grossly negligent medical care provided by Nelson[4] resulting in the foreseeable consequence of the perforation of Decedent's bowel, sepsis and ultimate death.[5] This GTCA Notice letter was sent more than one year after Decedent's death, but within 110 days following receipt of the Decedent's full medical records. Plaintiff's GTCA claim was deemed denied by operation of law, 90 days after Hospital received Notice. On June 4, 2021, Plaintiff filed a Petition against Nelson for damages including punitive damages alleging Nelson was grossly negligent in her care and treatment of Decedent which caused his bowel perforation, sepsis and death. On June 21, 2021, Plaintiff filed an Amended Petition against Nelson and added Hospital as a defendant. Both the Petition and Amended Petition were filed less than 180 days after the deemed denial of Plaintiff's GTCA claim.[6]

¶4 Hospital filed a motion to dismiss the Amended Petition on August 4, 2021, arguing that Administrator did not timely file his medical malpractice lawsuit because he submitted the notice of tort claim "many months after the one-year deadline outlined in the GTCA, despite his having actual knowledge that he had a potential medical malpractice claim shortly after his brother's death on July 14, 2019."[7] Hospital asserted that Administrator's statement in the probate petition that he sought appointment "to look into the feasibility of filing a wrongful death action on behalf of Mark Glen Spencer's estate"[8] was evidence of his "actual knowledge" of a claim. Hospital next urged to the trial court that once the probate court entered an Order appointing Administrator, these allegations then became a "judicially determined fact that Special Administrator had actual knowledge of the potential medical malpractice claim well before the one-year deadline for his Notice of Tort Claim."[9] Hospital also asserted that Administrator's request for medical records also established his "knowledge" of a claim. The Order appointing Administrator only recites that "all allegations contained in the petition filed herein are true and correct."[10]

¶5 Administrator responded that the discovery rule applied, and that he could not have known whether there was a basis for a medical malpractice claim until he received the medical records providing documentation of Decedent's care and treatment by Hospital and Nelson. Administrator also argued that estoppel may be applied to extend the time limitation imposed under the GTCA where a principle of public policy or interest is fostered, or a fact issue exists regarding acts of concealing relevant information to the claim. Administrator also noted that Hospital's failure to provide medical records within thirty (30) days of receipt of request violated federal law. 45 CFR 164.524(b)(2).

¶6 The trial court granted Hospital's Motion to Dismiss and included the following rulings:

- Based on the evidence submitted by Movant, the Court finds that Plaintiff was aware of the existence of his wrongful death claim prior to the expiration of the deadline for his notice of tort claim.

- Plaintiff did not submit timely notice of tort claim as required by the Governmental Tort Claims Act based upon such knowledge.

- If employees of political subdivisions are acting within the course and scope of employment, they are not to be named individually in lawsuits concerning their employment, 51 O.S. § 163 (C). Such employees have individual immunity for any act or omission within the scope of employment.

- Lana Nelson, D.O., was an employee of Norman Regional Hospital Authority and the Court finds that she was acting within the course and scope of her employment with regard to the events at issue notwithstanding the Plaintiff's allegations of gross negligence and punitive damages against her.

- Lana Nelson, D.O., has immunity for the claims asserted and is entitled to be dismissed from this action. [11]

The trial court dismissed the action against Hospital and Nelson.

¶7 Administrator appealed the decision of the trial court raising several points of error summarized as: (1) whether the district court erred by failing to accept as true all well pleaded facts; and (2) whether the district court erred in making a factual determination that he was aware of the existence of his wrongful death claim before receiving the complete medical record. The Court of Civil Appeals affirmed the district court and held that the holding in Crawford on Behalf of CCC v. OSU Medical Trust, 2022 OK 25, 510 P.3d 824, did not apply to the medical negligence claims in the instant matter because Crawford "was not a wrongful death action based on negligence."[12] The Court of Civil Appeals also reasoned that: (1) Section 156 (F) of the GTCA specifically barred a wrongful death claim unless it was brought within one year after the death occurs; and (2) Nelson was an employee of Hospital, a political subdivision, and as such she could not be individually sued for actions arising within the scope of her employment, citing Anderson v. Morgan, 2016 OK CIV APP 40, 376 P.3d 913, Division III. The Court of Civil Appeals did not address issues raised by Administrator in the Petition in Error regarding individual liability for an employee's acts which are outside the scope of employment and not subject to the GTCA.

¶8 Administrator sought certiorari review asserting that (1) the decision of the Court of Civil Appeals conflicts with and misapplied this Court's holding in Crawford, supra., holding the discovery rule applies to the one-year notice period for medical negligence claims under the GTCA; (2) the Court of Civil Appeals erred in affirming the dismissal of claims against Nelson for gross negligence by affirming the trial court's finding that Nelson was acting within the course and scope of employment with Hospital and misapplied Anderson; and (3) the Court of Civil Appeals erred in failing to apply well settled law that the notice requirements of the GTCA do not apply to claims arising from employee conduct that falls outside the scope of employment. Pellegrino v. State ex rel. Cameron Univ. ex rel. Bd. Of Regents of State, 2003 OK 2, ¶ 4, 63 P.3d 535, 537. Certiorari was granted on May 23, 2023.

STANDARD OF REVIEW

¶9 We review the district court's dismissal of an action de novo. Kirby v. Jean's Plumbing Heat & Air, 2009 OK 65, ¶ 5, 222 P.3d 21, 23. Motions to dismiss are generally not favored. Id. The purpose of a motion to dismiss is to test the law that governs the claim, not to examine and reach conclusions about the underlying facts. Id. ¶ 5, 222 P.3d at 24. The Court must take as true all the allegations in the challenged pleading together with all reasonable inferences that can be drawn from them. MeGee v. El Patio, LLC, 2023 OK 14, ¶ 5, 524 P.3d 1283, 1285, see also, Wilson v. State ex rel. State Election Bd., 2012 OK 2, ¶ 4, 270 P.3d 155, 157. Dismissal is appropriate only when there is no cognizable legal theory to support the claim or there are insufficient facts under a cognizable legal theory. Id.

LEGAL ANALYSIS

The Discovery Rule Applies to the Commencement of the One-Year Notice Period in the GTCA where the Underlying Tort is Medical Negligence Arising from a Wrongful Death Claim.

¶10 The parties agree that Hospital is considered an Oklahoma political subdivision and that the general negligence claims are subject to the requirements of the GTCA. The GTCA adopts the doctrine of sovereign immunity[13] and then waives the immunity, but only to the extent and in the manner provided in the GTCA.[14] "The GTCA narrowly structures the method and timeframe for bringing a tort action against the State or a political subdivision." Crawford, supra. ¶ 6, 510 P.3d at 829.

¶11 In general, "a cause of action accrues, and the applicable statute of limitations begins to run when the injury occurs." Crawford, supra. ¶ 7, 510 P.3d at 830.[15] However, it is well settled that the "common law discovery rule tolls the limitations period until the injured party knows, or in the exercise of reasonable diligence should have known of the injury." Id. (emphasis added). The discovery rule applies to medical negligence claims that are not subject to the notice requirements of the GTCA. Wing v. Lorton, 2011 OK 42, ¶ 19, 261 P.3d 1122, 1127 (applying 76 O.S. § 18).[16] We recently announced that "if the discovery rule applies in a non-GTCA case, it applies to the commencement of the one-year notice period when that tort claim is subject to the GTCA." Crawford, supra. ¶ 7, 510 P.3d at 830.

¶12 On certiorari, Administrator urged that the Court of Appeals erred by failing to extend the discovery rule announced in Crawford to the medical GTCA negligence claims raised by Administrator regarding the care and treatment of Mark Glen Spencer.[17] Administrator argued that this Court made no distinction in Crawford between medical negligence claims subject to the GTCA that resulted in wrongful death and those that did not. We agree. The underlying claims asserted by Administrator arise from the alleged medical negligence of Dr. Nelson and pursuant to Crawford, the discovery rule applies to the commencement of the one-year notice requirements for the medical negligence claims subject to the GTCA.[18]

¶13 It is well settled that "a cause of action accrues when a litigant could first maintain an action to successful conclusion." Wing, supra. ¶ 12, 261 P.3d at 1125. The discovery rule envisions the "acquisition of sufficient information which, if pursued, would lead to the true condition of things will be held as sufficient knowledge to start the running of the statute of limitations." Id. at ¶ 13. Whether a plaintiff has sufficient information to trigger the running of the statute of limitations is a question of fact.[19] Motions to dismiss are not to determine fact questions.[20]

¶14 Administrator requested Hospital's medical records within three months of Decedent's death. Hospital provided less than 1/6 of the chart a couple of months after the request. Administrator had to make two additional letter requests for medical records. The full medical chart was not produced until three hundred eighteen Days (318) after Administrator's initial request, almost a full year after the initial request and more than one year after Decedent's death. Hospital had no explanation for this delay, and simply stated these things happen in litigation, and urged that Administrator's request to be appointed in the probate court equated to knowledge of a claim. Although Administrator was provided with approximately 100 pages of the requested medical records, it is for the trier of fact to determine when Administrator had sufficient information or knowledge to trigger the running of the statute of limitations under the discovery rule. We do not agree with Hospital's conclusion; knowledge of Decedent's death does not equate to knowledge of a medical negligence claim as a matter of law.

¶15 The notice provisions of the GTCA are to protect governmental interests by promoting prompt investigation, repair of dangerous conditions, the speedy settlement of claims with merit, and to give the governmental entity time to meet possible fiscal liabilities. Pellegrino, supra. ¶ 17, 63 P.3d at 540. The GTCA notice provisions are not to benefit a governmental entity who delays the production of timely requested relevant information.

Governmental Employees Have No Immunity Under the GTCA For Acts that are Willful or Wanton.

¶16 Next, we turn to Administrator's Certiorari argument that it is well settled law that the notice requirements of the GTCA do not apply to claims that arise from the conduct of employees that fall outside the course and scope of employment. Pellegrino, supra. We agree. It has long been established that immunity under the GTCA does not extend to governmental employees "who acted in a willful or wanton manner." Holman By and Through Holman v. Wheeler, 1983 OK 72, ¶ 15, 677 P.2d 645, 647. The GTCA is not to be construed to mean that a governmental employee may act in a willful and wanton manner and retain the immunity from individual liability under the GTCA. Id. The notice requirements of the GTCA do not apply to tort claims against a governmental employee when the plaintiff's claims are based upon allegations that the employee's acts were outside the scope of his or her employment. Pellegrino, supra. ¶ 18, 63 P.3d at 540. Administrator has alleged that in addition to negligent acts by Nelson, which would be covered under the GTCA, Nelson's medical care was grossly negligent, "evidenced an outrageous and willful disregard for the welfare of the Decedent"[21] and sought punitive damages against Nelson. The claims for gross negligence, outrageous and willful disregard for the welfare of Decedent are claims that as a matter of law fall outside the scope of employment of a governmental employee. Pellegrino, supra. On a motion to dismiss we take as true all the allegations in Administrator's Amended Petition, together with all reasonable inferences that can be drawn from them. MeGee, supra. It was error for the trial court to make a factual finding that Nelson was acting within the scope of employment for all acts complained of in the Amended Petition and to grant Hospital's motion to dismiss the claims against Nelson individually for gross negligence, outrageous and willful conduct. We hold as a matter of law that Nelson may be named individually as a defendant for any acts that fall outside the scope of her employment. It will be up to the trier of fact to determine if there are sufficient facts to render an ultimate finding on this issue.

CONCLUSION

¶17 We find that, under Crawford, the discovery rule applies to this case of wrongful death arising from a claim of medical negligence under the GTCA. We also find that, under Wing, it is a question of fact as to when a plaintiff possesses sufficient information to trigger the running of the statute of limitations under the discovery rule. The district court erred when it rendered factual determinations on a motion to dismiss. We further find that, under Pellegrino, willful and wanton, grossly negligent conduct showing outrageous and willful disregard for a patient's welfare, is not conduct within the scope of employment. And the notice requirements of the GTCA do not apply to claims that an employee acted outside the scope of her employment. When deciding a motion to dismiss where a plaintiff alleges such willful and wanton conduct, the trial court must take as true the facts as alleged and their reasonable inferences, determining whether, such facts if true, support the legal claim. Where the trial court must choose among differing facts to reach its conclusion, then dismissal is not appropriate.

¶18 The opinion of the Court of Civil Appeals is vacated, the decision of the district court is reversed, and this matter is remanded to the trial court for proceedings consistent with this Opinion.

COURT OF CIVIL APPEALS' OPINION VACATED; 
DISTRICT COURT'S ORDER REVERSED; MATTER
REMANDED FOR FURTHER PROCEEDINGS

Kauger, Edmondson, Combs, Gurich and Darby, J.J., concur;

Kuehn, J., (by separate writing), concurs in part, dissents in part.

Kane, C.J., Rowe, V.C.J., Winchester, J., (by separate writing), dissent.

FOOTNOTES

[1] ROA, #6, Def. Norman Regional Hospital Reply to Plf. Response to Mot. to Dismiss, Ex. B, Pet. for Appt. of Spec. Adm., PB- 2019-130, Est. of Spencer., Garvin Co., OK.

[2] ROA, #6, Def. Norman Regional Hospital Reply to Plf. Response to Mot. to Dismiss, p.5: "The Personal Representative argues that his having received only a portion of the medical records and not knowing Dr. Nelson's employment status are of significance. Neither of these is pertinent to the Personal Representative's knowledge of his claim." (emphasis added).

[3] Id.

[4] Plaintiff notes in this letter that "based upon very recently acquired information that Dr. Nelson may be an employee of yours [Hospital] through a clandestine arrangement not ostensibly available to the public." ROA, # 5, Plf. Resp to Hosp. Mot. to Dismiss, Ex. 4, 12-23-20 letter from Plf. Counsel to Hospital.

[5] Id.

[6] By statute, all GTCA claims must be "commenced" within 180 days after denial of the claim. This action was initiated less than ninety days after the denial of the claim, well within this time limitation.

B. No action for any cause arising under this act, Section 151 et. seq. of this title, shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section. The claimant and the state or political subdivision may agree in writing to extend the time to commence an action for the purpose of continuing to attempt settlement of the claim except no such extension shall be for longer than two (2) years from the date of the loss. 51 O.S. Supp.2012, § 157 (B).

[7] ROA, #4, Norman Reg. Hosp. Mot. to Dismiss and Brief in Support, 8-4-21, Ex. A.

[8] Id.

[9] Id.

[10] Id.

[11] ROA, #1, Journal Entry, 1-13-22.

[12] Op. Court of Civil Appeals, 10-18-22.

[13] "The GTCA adopts the doctrine of sovereign immunity and provides that the State, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." Smith v. City of Stillwater, 2014 OK 42, ¶ 14, 328 P.3d 1192, 1198, citing 51 O.S. § 152.1(A).

[14] Id.

[15] See also, Calvert v. Swinford, 2016 OK 100, ¶ 11, 382 P3d 1028. 1033.

[16] See also, Seitz v. Jones, 1961 OK 283, 370 P.2d 300 (applying the common law discovery rule).

[17] The Journal Entry was filed in the district court on January 13, 2022, three months before Crawford was filed.

[18] We note that neither party to this action raised or relied upon Section 156 (F) of the GTCA before the district court, and no such issues were raised or preserved on appeal by either party relating to this statutory section which provides:

F. When the claim is one for death by wrongful act or omission, notice may be presented by the personal representative within one (1) year after the death occurs. If the person for whose death the claim is made has presented notice that would have been sufficient had he lived, an action for wrongful death may be brought without any additional notice.

Our review on certiorari is limited to issues presented in the petition for certiorari unless such issues were presented in the Petition in Error and not addressed by the Court of Civil Appeals. See, Okla.Sup.Ct.R. 1. 180 (b).

[19] Wing, supra. ¶ 18, 261 P.3d at 1127.

[20] Kirby, supra. ¶ 5, 222 P.3d at 23; MeGee, supra.

[21] ROA, # 3, Amended Petition, 6-21-21.

 

 

KUEHN, J., CONCURRING IN PART AND DISSENTING IN PART:

¶1 It is easy to get sidetracked by the facts. But I would focus not on what the Hospital did not do, but on what Appellant was required to do under the controlling statute, 51 O.S.2021, § 156(F) (superceded Nov. 1, 2022).[1] Section 156(F) provides that a person intending to file a claim for wrongful death under the Governmental Tort Claims Act must present notice within one year after the death occurs. It is undisputed that Appellant failed to do so.

¶2 This Court has held that the discovery rule -- extending the time limits until a prospective plaintiff knows or should have known of the injury -- applies to medical negligence claims under 51 O.S. 156(B), the general loss provision of the GTCA. Crawford v. OSU Medical Trust, 2022 OK 25, ¶ 8, 510 P.3d 824, 830. Appellant argues that Crawford should apply in cases of medical negligence claims involving death, as well. Crawford was handed down after the trial court made its ruling granting Hospital's motion to dismiss for untimely notice. However, COCA was aware of Crawford and declined to extend its provisions.

¶3 That decision gives rise to the first issue in this case. Again, it is easy to get sidetracked. But the question isn't when Appellants had enough information to file a medical malpractice lawsuit. This issue is confined to notice -- when Appellants had enough information to inform the defendants that they believed they had a claim under the GTCA. The Majority concludes that there is no distinction between medical negligence cases under the GTCA that result in death, and those that do not; therefore, pursuant to Crawford, the discovery rule applies to claims of wrongful death subject to the notice provision of Section 156(F). I conclude that we need not answer that question today.

¶4 The discovery rule is satisfied when a plaintiff has sufficient information to be aware of the claims. Crawford, 2022 OK 25, ¶ 10, 510 P.3d at 831. In Crawford, plaintiffs' claim of medical negligence stemmed from the loss of an eye due to an alleged misdiagnosis. Although the Crawfords discovered that the treating doctor was subject to the GTCA within a year from the injury, they did not file notice of their GTCA claim until after the year had passed. Much like Appellants here, the Crawfords claimed the delay was necessary because counsel had to collect and review medical records and confer with an expert in order to develop sufficient information that they had a medical negligence claim. They argued that because they were unable to begin that discovery process until they learned the treating doctor was a state employee, the statutory limit should be extended to expire a year from that date. We rejected that argument. The relevant question to start the clock under the statute was not when the parties learned the details of the doctor's employment. It was when they learned that the injured person lost his eye; that is, it was when the loss occurred. Id., ¶ 13, 510 P.3d at 831-32.

¶5 The Majority formally extends Crawford to wrongful death claims falling under Section 156(F). However, rather than following the actual Crawford ruling, the Majority falls into the trap Crawford rejected. The Opinion focuses on Hospital's failure to timely provide medical records. This approach appears to accept without question Appellant's argument that he could not gather enough substantive information to file suit until he reviewed the medical records. But that's not what Crawford held. Sections 156(B) and 156(F) provide that a plaintiff must give notice within a year, not that she must file suit. In Crawford we explicitly said that the loss of the eye provided enough information to make them aware of a claim of loss, triggering the GTCA notice provision -- and that after giving notice, they would have a duty to investigate the claims and theories of liability which might support an eventual lawsuit. Id. Crawford recognized that giving notice and filing a lawsuit are two different things.

¶6 I believe the same thing is true here. Plaintiffs knew Spencer had been hospitalized, had surgery, and died of sepsis. This is analogous to Crawford's loss of an eye: it was clear from the time of death that something was wrong. The issue is not whether sepsis actually results from medical malpractice, which is a question of fact for each individual case. Appellants alleged the decedent's death from sepsis was the result of Dr. Nelson's treatment. I agree with the Majority that on a motion to dismiss, the trial court takes the facts pled as true, and we, like the trial court, must assume that allegation is true. Discovery -- Appellant's request for medical records -- was no doubt necessary to investigate and determine what claims and theories of liability would support Appellant's eventual lawsuit, and to bring that allegation. But the notice provision in Section 156(F) doesn't require Appellants to develop their entire case; they just had to know that something went badly wrong during the course of the hospitalization. There may be cases in which some further discovery is necessary to find out that you have a wrongful death claim. This isn't one of them. Appellant didn't file notice under the GTCA until seventeen months after the death. In this case, we don't need to decide whether to extend Crawford, because whether we do or not, under Crawford's facts the one-year notice period is not extended. Notice was not timely, and I would affirm the COCA decision.

¶7 I agree with the Majority's conclusion that the second issue -- whether Dr. Nelson was acting within the scope of her employment -- should be remanded. Generally speaking, an employee's willful and wanton conduct will not be within her scope of employment. Pellegrino v. State ex rel. Cameron University, 2003 OK 2, ¶ 10, 63 P.3d 535, 538. Insofar as the Majority may hold that a claim of gross negligence, standing alone with no element of willful or wanton conduct, can satisfy that requirement, I disagree. However, I find that the record here is too sparse to resolve this question. In its summary ruling the trial court found Dr. Nelson was acting within the scope of her employment "notwithstanding the Plaintiff's allegations of gross negligence and punitive damages. . . ." Did the trial court determine this based on the facts alleged in the Petition in Error? Did the court determine that the allegations of gross negligence could not support the claim as a matter of law? We don't know. I would remand for the trial court to make its reasoning clear.

FOOTNOTES

[1] This section, in effect at the time this suit was filed, was recodified as Section 156(I), and our decision applies to the current statute as well as the superseded statute.

 

 

 

Winchester, J., with whom Kane, C.J., and Rowe, V.C.J. join, dissenting: 

¶1 I dissent. The majority fails to address the specific notice requirement in the Oklahoma Governmental Tort Claims Act ("GTCA") for wrongful death claims and extends the discovery rule far beyond the bounds of Oklahoma law. The Court also conflates allegations of gross negligence with those of malice or intentional acts to place Lana Nelson, D.O. ("Doctor") outside the scope of her employment with Norman Regional Medical Authority ("Hospital"), thereby removing the immunity provided to a state employee by merely pleading gross negligence.

I. THE DISCOVERY RULE SHOULD NOT APPLY TO THE WRONGFUL DEATH CLAIM. 

¶2 I disagree with the majority's embedding the equivalent of a discovery rule onto the notice provisions of the GTCA to toll the period for filing a notice of claim for wrongful death. The GTCA is the "exclusive remedy against a governmental entity in this State; the only recovery available in tort against a political subdivision must be found within the boundaries defined by the Act." Curtis v. Bd. of Ed. of Sayre Pub. Schs., 1995 OK 119, ¶ 4, 914 P.2d 656, 658. Once a claimant invokes the provisions of the GTCA that would permit a suit against the State, he is bound by its limitations and restrictions. One of the restrictions that a claimant is bound by is giving notice of his claim within a certain period of time. "Compliance with the statutory notice provisions of the [GTCA] is a jurisdictional requirement to be completed prior to the filing of any pleadings." Hall v. The GEO Grp., Inc., 2014 OK 22, ¶ 13, 324 P.3d 399, 404.

¶3 The general notice provision requires that the time to file a notice of claim is calculated from "the date the loss occurs." 51 O.S.2021, § 156(B) (superceded Nov. 1, 2022) (emphasis added). Separate from the general notice requirement, the GTCA has a notice provision regarding wrongful death claims. Section 156(F) stated:

I. When the claim is one for death by wrongful act or omission, notice may be presented by the personal representative within one (1) year after the death occurs. If the person for whose death the claim is made has presented notice that would have been sufficient had he lived, an action for wrongful death may be brought without any additional notice.

51 O.S.2021, § 156(F) (superceded Nov. 1, 2022) (emphasis added).

¶4 The Legislature amended the statute in 2001 to include a more definite date for the notice requirement--one year after the death occurs. When the Legislature originally enacted the wrongful death notice provision in the GTCA, it stated that the claim may be presented by the personal representative "within one (1) year after the alleged injury or loss resulting in such death." 51 O.S.2001, § 156(F) (superceded Oct. 24, 2001) (emphasis added).

¶5 The statutory language of the general notice provision that allows notice to be presented within one year from the date the "loss occurs" or the superceded version of the wrongful death notice provision that allowed notice to be presented within one year after the "alleged injury or loss resulting in death" is open to interpretation because of the different levels of knowledge plaintiffs may be required to have regarding their loss. The amended wrongful death notice provision, however, requires that notice be given within one year of a verifiable event, i.e., death.

¶6 We must construe the GTCA in accordance with what we deem to be the intent of the Legislature in enacting it. Because the GTCA is in derogation of the State's sovereignty, it "will not be construed to divest the [S]tate of its immunities unless the intention to do so is clearly expressed." Gurley v. Mem'l Hosp. of Guymon, 1989 OK 34, ¶ 6, 770 P.2d 573, 576. Here, the Legislature's intention is clear. The amendment to this provision only narrowed the scope of time to provide notice. The statutory cause of action for wrongful death now accrues at the time of death, and not when survivors at some indefinite point in the future realize that the cause of death may be actionable. Any alteration of that language is a matter for the legislature, not for this Court. Thus, Section 156(F) should not be construed to include a discovery rule that clearly is not part of the statutory language and that would divest the State of its immunity.

¶7 Even if the discovery rule applied to the wrongful death notice provision, I disagree with the majority that Crawford v. OSU Medical Trust, 2022 OK 25, 510 P.3d 824, does not apply to this matter. In Crawford, we explained that the discovery rule applies when the injury manifests after the wrongful act or omission responsible for the medical negligence action. The Court stated that was not the situation in Crawford because the claimant's injury (loss of an eye) manifested just five days after the doctor's alleged wrongful act or omission. Id. ¶ 11, 510 P.3d at 831. Therefore, the claimant was aware of the injury shortly after the wrongful act or omission. Id. ¶ 13, 510 P.3d at 832.

¶8 The injury here is death, even more ascertainable than the loss of an eye in Crawford. It is undisputed that Jimmy Wayne Spencer ("Administrator") knew about the injury, the death, which occurred only two days after the bariatric surgery was performed on Mark Spencer ("Spencer"). The purpose of the discovery rule "is to exclude the period of time during which the injured party is reasonably unaware that an injury has been sustained so that people in that class have the same rights as those who suffer an immediately ascertainable injury." Woods v. Prestwick House, Inc., 2011 OK 9, ¶ 24, 247 P.3d 1183, 1190. The Administrator was on notice at the time of death; this was an immediately ascertainable injury.

¶9 Our Court has never held that a claimant must obtain actual knowledge of a claim, including the wrongfulness and cause. Instead, we have stated that the discovery rule shields a plaintiff from the accrual of a cause of action until he discovers, or by the exercise of reasonable diligence should have discovered, that he has an actionable claim. Samuel Roberts Noble Found. v. Vick, 1992 OK 140, ¶ 22, 840 P.2d 619, 624 (emphasis added). The Administrator knew he may have a claim and undertook to pursue it shortly after Spencer's death. The Administrator retained a lawyer and was appointed administrator well within the year's notice requirements "to look into" a potential wrongful death claim. The standard to apply the discovery rule is not whether his claim had merit to win but whether he had a potential claim. The discovery rule should not apply to this case.

II. AN ALLEGATION OF GROSS NEGLIGENCE SHOULD NOT PLACE DOCTOR OUTSIDE THE SCOPE OF HER EMPLOYMENT AND IMMUNITY UNDER THE GTCA. 

¶10 The majority also holds that a mere allegation of gross negligence places an employee outside the scope of her employment with a state entity, and, in turn, outside the immunity provided to employees of state entities under the GTCA.

¶11 Oklahoma law recognizes the applicability of the doctrine of respondeat superior to the GTCA. Under the theory of respondeat superior, "one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." Nail v. City of Henryetta, 1996 OK 12, ¶ 11, 911 P.2d 914, 917. The GTCA defines scope of employment as the "performance of an employee acting in good faith within the duties of office or employment or of tasks lawfully assigned." 51 O.S. Supp. 2024, § 152(12). A governmental employee acting within the scope of employment is relieved from individual liability for tortious conduct. Pellegrino v. State ex rel. Cameron Univ., 2003 OK 2, ¶ 4, 63 P.3d 535, 537. An employee acts outside the scope of employment if the employee acts maliciously or in bad faith. Id.; Nail, 1996 OK 12, ¶ 7, 911 P.2d at 916.

¶12 Here, the Administrator alleges gross negligence against Doctor to hold her individually liable in the performance of the bariatric surgery on Spencer.[1] Under Oklahoma law, gross negligence does not amount to malice or bad faith. Gross negligence is defined as "the want of slight care and diligence." 25 O.S.2021, § 6. Malice is defined as the intentional doing of a wrongful act without justification or excuse. Mangum Electric Co. v. Border, 1923 OK 547, ¶ 11, 222 P. 1002, 1005. Bad faith is defined as acting with actual intent to mislead or deceive another. Pabst Brewing Co. v. Nelson, 1925 OK 426, ¶ 20, 236 P. 873, 875. While good faith consists of "an honest intention to abstain from taking any unconscientious advantage of another." 25 O.S.2021, § 9.

¶13 This Court has explained:

[T]he common law divides "actionable tortious conduct" into (1) negligence, and (2) willful acts that result in intended or unintended harm." In the lower tier of tortious conduct lie three levels of negligence. These are defined by statute in Oklahoma as slight negligence, ordinary negligence, and gross negligence. In the higher tier lie two distinct levels: (1) wil[l]ful and wanton misconduct and (2) intentional misconduct.

Parret v. UNICCO Serv., Co., 2005 OK 54, ¶ 12, 127 P.3d 572, 575-76 (internal citations omitted). A state employee acts outside the scope of his employment when there are allegations of the higher tier of tortious conduct--willful and wanton or intentional conduct.

¶14 For example, in Gowens v. Barstow, 2015 OK 85, ¶ 22, 364 P.3d 644, 652, we held that "reckless disregard" did not amount to malice or bad faith to place a paramedic supervisor outside the scope of his employment. The Court reasoned:

Mr. Barstow was a paramedic supervisor responding to an emergency call with lights flashing and siren activated. He is allowed by law to exceed the speed limit as long as it does not endanger life or property. Even though his act of speeding through this particular intersection was found to be reckless his actions leading up to the collision were naturally incident and in furtherance of his duties to his employer. There is no indication that his actions, although having been found unreasonable under the circumstances, were so extreme that they unlawfully usurped any power he did not rightfully possess as an emergency vehicle driver.

Id.

¶15 The cases cited by the Administrator to support the notion that Doctor was acting outside the scope of her employment demonstrate this difference; the cases cited involve much more than gross negligence and instead clear willful or intentional conduct.

¶16 In Pellegrino, 2003 OK 2, ¶ 2, 63 P.3d at 536, the allegations against a university employee were tortious interference with contract, which involves the proof of intentional conduct that is improper or unfair.

¶17 In Holeman v. Wheeler, 1983 OK 72, ¶ 4, 677 P.2d 645, 646, a school administrator, while intoxicated, spanked and beat a child. The school administrator's action amounted to willful and wanton conduct, placing him outside the scope of his employment.

¶18 We have upheld that there is a clear distinction between negligence, whether that negligence be ordinary or gross, and intentional or willful acts. In the same way, the GTCA has distinguished malice and bad faith from negligence in determining whether an employee is within the scope of her employment. Here, the Administrator alleged medical negligence that led to the death of Spencer. Specifically, the Administrator contended that Doctor failed to repair a hernia, which led to a bowel perforation and sepsis. Neither malice nor bad faith is a requisite element to this cause of action of medical malpractice leading to a wrongful death. There are no allegations of malice, intentional, or willful acts that should place Doctor outside the scope of her employment, thereby removing the immunity provided by the State.

¶19 For these reasons, I respectfully dissent.

FOOTNOTES

[1] The fact that the Administrator alleges punitive damages against Doctor does not automatically place her outside the scope of her employment. A jury can award punitive damages not only for intentional acts but also for reckless behavior. See OUJI (Civil) No. 5.6. For the reasons stated herein, allegations of reckless disregard or gross negligence does not place a state employee outside the scope of her employment. And punitive or exemplary damages are not allowed under the GTCA. 51 O.S.2021, § 154(C).

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2016 OK CIV APP 40, 376 P.3d 913, 
ANDERSON v. MORGAN
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1989 OK 34, 770 P.2d 573, 60 OBJ 626, 
Gurley v. Memorial Hosp. of Guymon
Discussed

 
1992 OK 140, 840 P.2d 619, 63 OBJ 2931, 
Samuel Roberts Noble Foundation, Inc. v. Vick
Discussed

 
1923 OK 547, 222 P. 1002, 101 Okla. 64, 
MANGUM ELEC. CO. v. BORDER
Discussed

 
1995 OK 119, 914 P.2d 656, 66 OBJ 3478, 
Curtis v. Board of Educ. of Sayre Public Schools
Discussed

 
2003 OK 2, 63 P.3d 535, 
PELLEGRINO v. STATE EX REL. CAMERON UNIVERSITY
Discussed at Length

 
1996 OK 12, 911 P.2d 914, 67 OBJ 525, 
Nail v. City of Henryetta
Discussed at Length

 
2005 OK 54, 127 P.3d 572, 
PARRET v. UNICCO SERVICE COMPANY
Discussed

 
2009 OK 65, 222 P.3d 21, 
KIRBY v. JEAN'S PLUMBING HEAT & AIR
Discussed

 
2011 OK 9, 247 P.3d 1183, 
WOODS v. PRESTWICK HOUSE, INC.
Discussed

 
2011 OK 42, 261 P.3d 1122, 
HAWK WING v. LORTON
Discussed

 
2012 OK 2, 270 P.3d 155, 
WILSON v. STATE ex rel. STATE ELECTION BOARD
Discussed

 
2014 OK 22, 324 P.3d 399, 
HALL v. THE GEO GROUP, INC
Discussed

 
2014 OK 42, 328 P.3d 1192, 
SMITH v. CITY OF STILLWATER
Discussed

 
2015 OK 85, 364 P.3d 644, 
GOWENS v. BARSTOW
Discussed

 
2016 OK 100, 382 P.3d 1028, 
CALVERT v. SWINFORD
Cited

 
2022 OK 25, 510 P.3d 824, 
CRAWFORD v. OSU MEDICAL TRUST
Discussed at Length

 
1961 OK 283, 370 P.2d 300, 
SEITZ v. JONES
Discussed

 
1925 OK 426, 236 P. 873, 108 Okla. 286, 
PABST BREWING CO. v. NELSON
Discussed

 
2023 OK 14, 524 P.3d 1283, 
MEGEE v. EL PATIO
Discussed

 
1983 OK 72, 677 P.2d 645, 
Holman By & Through Holman v. Wheeler
Discussed at Length

Title 25. Definitions and General Provisions

 
Cite
Name
Level

 
25 O.S. 6, 
Types of Negligence Defined
Cited

 
25 O.S. 9, 
Good Faith Meaning
Cited

Title 51. Officers

 
Cite
Name
Level

 
51 O.S. 154, 
Extent of Liability
Cited

 
51 O.S. 156, 
Claims - Petition - Limitation of Actions - Notice - Wrongful Death
Discussed at Length

 
51 O.S. 152, 
Definitions
Cited

 
51 O.S. 151, 
Short Title
Cited

 
51 O.S. 152.1, 
Adoption of Doctrine of Sovereign Immunity
Cited

 
51 O.S. 157, 
Notice of Approval or Denial of Claim
Cited

 
51 O.S. 163, 
Venue - Parties - Service of Process - Evidence of Insurance
Cited

Title 76. Torts

 
Cite
Name
Level

 
76 O.S. 18, 
Limitation of Action
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA